# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

In re: THOMAS J. WARD,

      Petitioner.

Case No. 26-7029
(D.C. No. 6:23-CV-146-JFH-GLJ)
(E.D. Okla.)

## RESPONSE TO THE TENTH CIRCUIT'S ORDER

The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") invited this Court[1] to respond to Petitioner Thomas J. Ward's ("Mr. Ward") Petition for Writ of Mandamus on April 16, 2026. Dkt. No. 3. In accordance with that invitation, the Court addresses Mr. Ward's Petition for Writ of Mandamus.

It is well known that this Court has experienced unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma,* 591 U.S. 894 (2020).[2] *See United States v. Daniels,* Case No. 23-CR-209-RAW, 2024 WL 2158672, at * 1, n.1 (E.D. Okla. May, 8, 2024) (unpublished) (categorizing the shockwaves of *McGirt* as "the ongoing *McGirt* crisis"). *McGirt* imposed federal "jurisdiction over the apprehension and prosecution of major crimes by or against Indians in a vastly expanded Indian Country." *State ex rel. Matloff v. Wallace,* 497 P.3d 686, 692 (Okla. Crim. App. 2021). *McGirt*'s holding has been extended to other

---

[1] The written order invited the "district court" to respond. Dkt. No. 3. However, the docket entry reflects "[r]esponse due 05/18/2026 for Bonnie Hackler." In accordance with the written order, the undersigned, presiding judge, Chief United States District Judge, John F. Heil, III, responds.

[2] In *McGirt*, the Supreme Court held that Oklahoma lacked jurisdiction to prosecute the criminal defendant in that case because the defendant was Native American and he committed his crime within the boundaries of the Muscogee Creek Nation Reservation, a reservation that the *McGirt* Court determined was "Indian country" for purposes of the Major Crimes Act, 18 U.S.C. § 1153(a), because Congress never disestablished the reservation. *McGirt*, 591 U.S. at 897-900, 923-925.

reservations as well.[3]  As Chief Justice Roberts recognized in his *McGirt* dissent, "the share of serious crimes committed by 10%–15% of the 1.8 million people in eastern Oklahoma, or of the 400,000 people in Tulsa, is no small number." *McGirt,* 591 U.S. at 971 (Roberts, C.J., dissenting). Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt*.  *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 635 (2022).  And numerous federal courts have "noted *McGirt*'s tremendous impact." *United States v. Budder*, 601 F. Supp. 3d 1105, 1114 (E.D. Okla. 2022) (collecting cases).

*McGirt* caused an immediate increase of nearly 200% in the number of criminal cases filed in the Northern District and more than 400% in the United States District Court for the Eastern District of Oklahoma ("Eastern District").  *See* U.S. Courts, Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects.  Complicating these unprecedented increases in criminal cases is that the undersigned is not only the Chief Judge of the Eastern District, but also the Chief Judge of the United States District Court for the Northern District of Oklahoma ("Northern District"), and shares caseloads in both districts.  The Court also notes there are district judge vacancies in both the Eastern District and the Northern District, which further contributes to the Court's increased caseloads.  Because of its overburdened criminal caseloads, and increased volume of civil cases due to judicial vacancies, there are many cases that await a resolution – and their resolution is taking much longer than the Court would prefer.

---

[3]  *See, e.g., Hogner v. State*, 500 P.3d 629 (Okla. Crim. App. 2021) (Cherokee Reservation) (overruled on other grounds by *Doe v. Parish*, 541 P.3d 833 (Okla. Crim. App. 2023)); *Grayson v. State*, 485 P.3d 250 (Okla. Crim. App. 2021) (Seminole Reservation); *Sizemore v. State*, 485 P.3d 867 (Okla. Crim. App. 2021) (Choctaw Reservation); *Bosse v. State*, 499 P.3d 771 (Okla. Crim. App. 2021) (Chickasaw Reservation).

Beyond the unique circumstances of this Court's dockets, the Court further notes the complexities of the case at bar. Mr. Ward raises an actual innocence gateway claim. *See* Dkt. No. 1-1 at 43-107. In support of this claim, Mr. Ward provided the Court with over four thousand (4,000) pages of documents to review. *See id.* at 35-37. The State of Oklahoma also provided the habeas transcript(s) and record(s) which amount to over seven thousand (7,000) pages. *See id.* at 40; *see also* Notice of Filing State Court Habeas Transcript(s)/ Record(s), *Ward v. Buss*, Case No. 23-CV-146-JFH-GLJ (E.D. Okla. June 30, 2023), Dkt. Nos. 58-1 through 58-39.

Evaluating the merits of a gateway actual innocence claim requires a federal court to consider the trial record as supplemented by the new evidence and to make a "holistic judgment about all the evidence and its likely effect on reasonable jurors applying the reasonable-doubt standard." *House v. Bell*, 547 U.S. 518, 539 (2006)). "Because [an actual innocence] claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record." *Id.* at 538. In making that assessment, the Court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* (cleaned up and internal quotations omitted).

Accordingly, to appropriately evaluate Mr. Ward's actual innocence gateway claim, the Court must diligently consider the voluminous record and evidence presented. This is a fact-intensive and time-intensive process even without the noted constraints on this Court's time and resources. The undersigned outlines these factors, not as an excuse, but simply to provide the proper backdrop to any perceived delay. The Court remains cognizant of Mr. Ward's interests in this matter and will address his Petition as expeditiously as possible.

Dated this 14th day of May, 2026.

_____
JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE